IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BEDIVERE INSURANCE COMPANY §
F/K/A GENERAL ACCIDENT §
INSURANCE OF AMERICA, §
§
Plaintiff, §
§ Civil Action No. 3:16-CV-1111-D
VS. §
§
PACIFIC VAN & STORAGE OF TEXAS, §
INC., D/B/A JOYCE MOVING & §
STORAGE COMPANY, INC., et al., §
§
Defendants. §

## MEMORANDUM OPINION
## AND ORDER

In this action by plaintiff Bedivere Insurance Company f/k/a General Accident Insurance of America ("Bedivere") seeking a declaratory judgment that it has no duty to defend or indemnify defendant Pacific Van & Storage of Texas, Inc., d/b/a Joyce Moving & Storage Company, Inc. ("Pacific") concerning a lawsuit filed in state court by Barbara Assouad ("Assouad"), Bedivere moves for summary judgment, Pacific moves for partial summary judgment, and Pacific moves to stay the determination of whether Bedivere has a duty to indemnify Pacific until after a final judgment is rendered in the underlying lawsuit. For the reasons that follow, the court grants Pacific's motion for partial summary judgment, denies in part and declines to reach in part Bedivere's motion for summary judgment, and grants Pacific's motion to stay. The court directs the clerk of court to close this case for statistical purposes during the pendency of the stay.

I

Bedivere, an insurer, sues its insured, Pacific, the operator of a storage facility located in Lancaster, Texas, seeking a declaratory judgment that it has no duty to defend or indemnify Pacific in a Texas court lawsuit brought by Assouad individually and as the legal representative of the estate of her late husband Karim.[1]  *See Assouad v. Pacific Van & Storage, Inc.*, No. DC-15-10466 (162nd Dist. Ct., Dallas County, Tex.) (the "Underlying Lawsuit").  In the Underlying Lawsuit, Assouad alleges that she and Karim entered into a bailment contract with Pacific under which Pacific agreed to store the Assouads' personal property for a monthly fee; that the Assouads stored their property with Pacific and paid the monthly fee from September 1991 until January 2015; that in May 1999 storms partially destroyed Pacific's facility, allowing water to penetrate into the Assouads' vaults and possessions; that immediately after the storms, Pacific unpacked the Assouads' property, attempted to remediate the water damage, and repacked the Assouads' property into new boxes; that during the attempted remediation, Pacific misplaced some of the Assouads' property; that Pacific either never or inappropriately disclosed the water damage, subsequent remediation and repacking efforts, and loss of the Assouads' property, yet continued to accept the Assouads' monthly payment; and that when Karim died in 2014 and the family

_____

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

decided to remove their goods from storage, they discovered that their property had been destroyed by water and toxic black mold. In her second amended original petition ("Petition") in the Underlying Lawsuit, Assouad alleges claims against Pacific for common law fraud, negligent misrepresentation, negligence, unconscionable conduct, and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (West 2015).

At the time of the alleged storm damage in 1999, Bedivere insured Pacific under an insurance policy ("Policy") that covered Pacific for accidental loss to personal property stored at Pacific's facility. When Pacific requested that Bedivere provide a defense in the Underlying Lawsuit, Bedivere filed the instant declaratory judgment action against Pacific and Assouad, seeking a declaratory judgment that is has no duty to defend or indemnify Pacific.

Bedivere now moves for summary judgment, seeking a declaration that it has no duty to defend or indemnify Pacific because the Policy contains an exclusion for damage caused by "dishonest . . . act(s)." P. 11/7/16 Br. 13. Pacific opposes Bedivere's motion and also moves for partial summary judgment, seeking a declaration that Bedivere has a duty to defend Pacific for claims arising out of negligent acts that occurred during the Policy period. It separately moves for a stay, requesting that the court stay the determination of whether Bedivere has a duty to indemnify Pacific under the Policy until there is a final judgment in the Underlying Lawsuit.

II

The court first considers the parties' cross-motions for summary judgment regarding Bedivere's duty to defend. Because the parties' motions present the same issues, the court will consider them together.

A

In Texas,[2] "[t]he duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) (citation omitted). "Texas follows the 'eight-corners' rule, under which the court looks only to the third-party plaintiff's pleadings and the provisions of the insurance policy in determining whether an insurer has a duty to defend." *Trammell Crow Residential Co. v. Va. Sur. Co.*, 643 F.Supp.2d 844, 849 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). "Neither facts outside the pleadings nor the truth or falsity of the allegations should be considered, and the allegations against the insured should be 'liberally construed in favor of coverage.'" *Id.* (quoting *GuideOne Elite*, 197 S.W.3d at 308); *see also Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 597 (5th Cir. 2011) ("[W]e may not infer additional facts that are not in the pleadings."). The court must "resolve all doubts regarding the duty to defend in favor of the duty." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (citing *King*

---

[2]Because both parties cite Texas law to interpret the Policy, the court will assume that the Policy is governed by Texas law.

*v. Dall. Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).  Under the "eight-corners" rule,

> [i]f the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend.  If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.

*Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006) (footnotes omitted).  "If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 395 (5th Cir. 2001).

The insured has the initial burden of showing that a claim is potentially within the scope of policy coverage, and, once the insured's burden is met, "the insurer bears the burden of showing that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of *all* claims, also within the confines of the eight corners rule." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing Tex. Ins. Code Ann. art. 21.58(b) (Vernon Supp. 1997)) (citing Texas cases).  "If the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) (citations omitted).

Each party's summary judgment burden depends on whether it is addressing a claim or defense for which it will have the burden of proof at trial.  To be entitled to summary judgment on a matter for which it will have the burden of proof, a party "must establish

'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). When the summary judgment movant will not have the burden of proof at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

B

Pacific maintains that the Petition states a claim that falls within the Policy's coverage for negligent acts that occurred during the Policy period. It contends that Assouad's allegations of negligence are claims of accidental occurrences resulting in a loss of property that clearly trigger the duty to defend Pacific in the Underlying Lawsuit: Assouad has alleged that Pacific was negligent in failing to allow the stored items to dry thoroughly before repacking them, and that Pacific was negligent in the method and manner that it

communicated or attempted to communicate the storm damage to Assouad. Pacific also contends that the Policy's exclusion for dishonest or criminal acts does not apply to Pacific's alleged *negligent* acts, and that because the Petition alleges both intentional conduct and negligence, there is a duty to defend.

Bedivere contends that all of Assouad's damages stem from the allegedly fraudulent conduct of Pacific, which is expressly excluded as a cause of loss under the Policy; that in determining whether there is a duty to defend, the court must focus on the factual allegations that show the origin of damages, and that, in the Underlying Lawsuit, all of the damages claimed by Assouad arose from the fact that Pacific did not reveal and/or concealed the storm damage to Assouad's property; and that Assouad's negligence claims are related to, interdependent to, and inseparable from the fraud and fraudulent concealment engaged in by Pacific, and, under Fifth Circuit authority, there is no duty to defend if the covered cause is related to, and interdependent to, the excluded cause of injury.

## C

The Policy provides coverage for "'loss' to personal property of others accepted for storage . . . arising out of an 'occurrence' while such property is located at" Pacific's premises. P. 11/7/16 App. 9. "Occurrence" is defined to include "an accident that takes place during the policy period." *Id.* at 16. Pacific has shown that at least one of Assouad's claims in the Underlying Lawsuit is potentially within the Policy. For example, Pacific has demonstrated that Assouad's negligence claim based on Pacific's failure to appropriately remediate the water damage caused by the 1999 storm and failure to take appropriate steps

to notify the Assouads that their possessions had been infiltrated with water from the storm is potentially covered under the Policy.  Because Pacific has met this burden, for Bedivere to establish that it has no duty to defend, it must show that the plain language of one or more policy exclusions bars coverage of all claims.  *See Northfield*, 363 F.3d at 528.

Bedivere relies on the following policy exclusion to argue that it has no duty to defend:

> This insurance does not apply to any loss, damage or expense for loss or damage: . . . caused by any dishonest or criminal act(s) by you, any of your partners, employees, or any other person in your service whether or not such an act or acts occur during the regular hours of employment or service.

P. 11/7/16 App. 10.  Bedivere contends that the court must focus on the factual allegations that show the origin of damages in determining the duty to defend, and that "[h]ere, the origin of Assouad's damages is clearly the dishonest acts of Pacific," as demonstrated by the Petition, in which Assouad "alleges that her damages were caused by the fraudulent concealment of Pacific."  P. 12/27/16 Br. 7.

The court disagrees that all of Assouad's claims fall within the Policy's "dishonest acts" exclusion.  Although the Petition clearly alleges damages arising from Pacific's intentional conduct, *see, e.g.*, P. 11/7/16 App. 48-49,[3] she also alleges that she has incurred

---

[3]The Petition alleges:

> [b]ecause of the Assouad family's justifiable reliance on Defendant's representations and fraudulent concealment of material facts, Defendant has damaged the Assouads in an amount within the jurisdictional limits of the Court.  These

damages as a result of Pacific's *negligence*, *see id.* at 50.[4] The Supreme Court of Texas has

held that when a complaint alleges both intentional conduct and negligence, the insurer has

a duty to defend. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 495 ("[T]he factual allegations here

support a duty [to defend]. The pleadings allege both intentional conduct (Nokia knew of

RFR's harmful effects and nonetheless intentionally sold its products to consumers) and

negligence (Nokia should have known of RFR's harmful effects."). This is true even when

the plaintiff pleads her negligence claim in the alternative. *See, e.g., Harken Expl. Co. v.

Sphere Drake Ins. PLC*, 261 F.3d 466, 474 (5th Cir. 2001) ("[T]he [insurer] must defend [the

insured] against the entire suit including causes of action that would not alone trigger the

duty to defend, regardless whether the complaint is pled in the alternative or not because the

Rices's factual allegations of negligence are sufficient to trigger the duty to defend." (citing

*St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. 1999, pet.

denied)); *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir. 1983) ("Whether a

complaint pleads in the alternative or alleges more than one cause of action, the insurer is

obligated to defend, as long as the complaint alleges at least one cause of action within the

coverage of the policy."); *Gehan Homes, Ltd. v. Emp'rs Mut. Cas. Co.*, 146 S.W.3d 833, 843

---

> damages include, but are not limited to, over two decades of monthly payments, destruction of the Assouad family's possessions, and mental anguish.

P. 11/7/16 App. 48-49.

[4]The Petition also asserts that "[b]ecause of Defendants['] failure to act reasonably, Defendant directly and proximately caused Plaintiffs' damages." *Id.* at 50.

(Tex. App. 2004, pet. denied) ("Alternative allegations of intentional or malicious conduct will not defeat the duty to defend if combined with allegations that would trigger coverage.").

To determine whether a duty to defend exists, the court focuses on the facts alleged in the underlying lawsuit, not the legal theories pleaded. *See, e.g., Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548, 553 (5th Cir. 2016) ("The facts alleged in the claim against the insured, not legal theories, control."); *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) ("In reviewing the pleadings and [determining whether there is a duty to defend], courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." (citing cases)); *St. Paul Ins. Co.*, 999 S.W.2d at 887 ("Although the plaintiffs *also* allege gross negligence and intentional torts, this is not controlling because we must focus on the facts alleged, not the legal theories pleaded . . . that coverage may not be available for *some* of the causes of action pleaded does not relieve St. Paul of its duty to defend."). In the Petition, Assouad asserts that Pacific breached its duty to exercise reasonable care when it attempted to remediate the water damage caused by the 1999 storm. In support, Assouad alleges the following facts:

> Defendant unpacked the Assouads' possession[s] and undertook steps to dry and remediate the water infiltration caused by the storm. Defendant only briefly allowed the Assouads' possession[s] to air dry. Defendant did not take any steps to determine whether the Assouads' possessions were appropriately and thoroughly dry before repacking them. Along with other customers, Defendant then immediately repacked the unpacked wet belongings in new boxes.

P. 11/7/16 App. 44-45. These are allegations of *negligent* conduct (i.e., that Pacific

"breached its duty when it failed to appropriately remediate the water damage[] caused by the 1999 storm to the Assouad family's possessions"). *Id.* at 50. The Petition does not allege that Pacific *intended* to improperly remediate the water damage caused by storm. Nor does it assert that Pacific's conduct was merely an attempt to cover up the water damage. Instead, the Petition alleges that Pacific "undertook steps to dry and remediate" the water infiltration caused by the storm, but that because of Pacific's negligence, its efforts were unsuccessful.

The Petition also alleges that Pacific acted negligently in its efforts (or lack thereof) to notify the Assouads of the water infiltration:

> To the extent Defendant alleges that it notified the Assouads of the water infiltration, it acted negligently. Either Defendant never notified the Assouads and/or it failed to take steps to ensure that the Assouads received notice of the storm water infiltration. Defendant failed to have any process to ensure that the Assouads[] received notice and/or adequate notice. Defendant did not follow up with the Assouads after not receiving any communications from the Assouads. Defendant failed to insert notices of the storm damage into the Assouads' invoice mailing, which it knew the Assouads received and paid each month.

*Id.* at 45-46. These are allegations of negligent conduct, not of dishonest acts. And although Assouad also alleges that Pacific's failure to adequately notify her was intentional, *see id.* at 48 ("[Pacific] intentionally and/or knowingly failed to tell the Assouad family of the destruction to their family's treasures"), this alternative allegation of intentional conduct does not defeat the duty to defend where, as here, it is combined with allegations that would trigger coverage. *Gehan Homes, Ltd.*, 146 S.W.3d at 843. Moreover, if the court eliminates the portion of the Petition that alleges an intentionally-caused injury, the balance of the

Petition, taken as true, is sufficient to state a cause of action against Pacific within the terms of the Policy. *See Superior Ins. Co. v. Jenkins*, 358 S.W.2d 243, 244 (Tex. App. 1962, writ ref'd n.r.e.); *see also Andrews Transp., Inc. v. CNA Reinsurance Co.*, 2002 WL 971369, at *2 (5th Cir. Apr. 22, 2002) (per curiam) ("Applying the approach used in *Superior Insurance*, if we separate out the statements and allegations in the original petition relating to the drivers' status as independent contractors, there would still be a set of facts and allegations under which the drivers were claiming to be employees who had been wronged by their employer so that they could proceed with their suit under the employee banner."); *cf. Gurley v. Am. States Ins. Co.*, 1995 WL 313954, at *3 (5th Cir. 1995) (per curiam) (holding there was no duty to defend where, although plaintiff asserted legal theory of negligence, plaintiff alleged facts—failure to inform "in *conscious disregard* for the rights and welfare of [the plaintiffs]," and unlawful acts "committed *knowingly*" by the insured—that supported only a theory of intentional conduct, rather than a theory of negligence).[5]

Bedivere maintains that, under the authority of *Columbia Mutual Insurance Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124 (5th Cir. 1993), there is no duty to defend in this case because "Assouad's negligence claims are related to, interdependent to, and inseparable from

_____

[5]Moreover, at the very least, "the complaint does not state facts sufficiently to clearly bring the case within or without the coverage," and by virtue of the Petition's alternative reference to negligent conduct, the court concludes that there is, "potentially, a cause under the complaint within the coverage of the policy." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

the non-covered claim (the dishonest acts) committed by Pacific." P. 12/27/16 Br. 7. Bedivere contends that all of Assouad's damages were caused by Pacific's decision to conceal the storm damage from the Assouads in order to continue receiving its monthly rental payments for storage space.

The court holds that *Columbia Mutual* is distinguishable. In *Columbia Mutual* the Fifth Circuit considered whether an insurance company was obligated to indemnify[6] its insured for negligently exposing the plaintiff class members to the fraudulent activities of its lessee. The court held that although the insured attempted to characterize the occurrence as exposure to its *own* negligent and unknowing acts, its liability was clearly "related [to] and interdependent" on its lessee's fraud because, "[w]ithout that fraud, there would have been no basis for suit against [the insured]." *Id.* at 1128 (first alteration in original). In the present case, however, the Petition does not, as Bedivere argues, allege that *all* of Assouad's damages were caused by Pacific's "decision to conceal the storm damage." P. 12/27/16 Br. 8. Instead, as explained above, Assouad clearly pleads damages as a result of Pacific's negligence when attempting to dry the Assouads' possessions and remediate the water infiltration caused by the storm, and its negligence in informing Assouad of the water damage. In other words, this is not a case like *Columbia Mutual* where, "[w]ithout [the allegation of] fraud, there would [be] no basis for suit against [Pacific]." *Columbia Mutual*, 987 F.2d at 1128.

---

[6]*Columbia Mutual* did not address the insurer's duty to defend.

In sum, the court concludes that because at least one of Assouad's causes of action in the Underlying Lawsuit potentially falls within the four corners of the Policy's scope of coverage and is not excluded under the "dishonest acts" exclusion, Bedivere has a duty to defend Pacific in the Underlying Lawsuit. Accordingly, the court grants Pacific's motion for summary judgment regarding Bedivere's duty to defend and denies Bedivere's cross-motion.

## III

Bedivere moves for summary judgment regarding its duty to indemnify Pacific. Pacific opposes the motion and separately moves to stay the determination of whether Bedivere has a duty to indemnify Pacific under the Policy until after a final judgment is rendered in the Underlying Lawsuit.

## A

Under Texas law, "the duty to defend and the duty to indemnify are distinct and separate duties." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009) (citation and internal quotation marks omitted). One duty may exist without the other, and although the duty to defend is "strictly circumscribed by the eight-corners doctrine, it is well settled that the facts actually established in the underlying suit control the duty to indemnify." *Id.* (citation and internal quotation marks omitted); *see also Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). Therefore, it is usually "necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Tex.*, 300 S.W.3d at 745. A narrow exception exists where "the same

reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis omitted). The Supreme Court of Texas has since clarified that this exception from *Griffin* "was grounded on the impossibility that the . . . case could be transformed by proof of any conceivable set of facts into [an occurrence] covered by the insurance policy." *D.R. Horton-Tex.*, 300 S.W.3d at 745. Bedivere moves for summary judgment regarding its duty to indemnify, contending that, as in *Griffin*, the pleadings in the Underlying Lawsuit show that there is no possibility that Bedivere will have a duty to indemnify Pacific. The court disagrees. Facts developed in the underlying litigation may establish that Pacific's conduct was negligent and does not fall within the "dishonest acts" Policy exclusion. Accordingly, the court denies Bedivere's motion for summary judgment to the extent Bedivere relies on *Griffin* to argue that it does not owe Pacific a duty to indemnify.

B

Bedivere also moves for summary judgment on the ground that the ultimate question of coverage can be determined as a matter of law based on undisputed facts. Bedivere contends that each of Assouad's claims is governed by a two- or four-year statute of limitations that began to run in 1999 when the damage occurred; that the discovery rule does not toll the applicable statutes of limitations because the damage to the Assouads' property was not inherently undiscoverable (the Assouads could have discovered the water damage at any time prior to January 2015 by simply inspecting their property), and, moreover,

Assouad does not allege that she made any effort to discover the damage at issue; that the fraudulent concealment doctrine is inapplicable because the Petition does not allege active concealment, an injury that could not have been discovered through reasonable diligence, or a fiduciary or other special relationship between the parties that would create a duty of disclosure on the part of Pacific; and that because there is no legal doctrine that will prevent Assouad's claims from being barred by limitations, Pacific will not be legally liable to Assouad, and, accordingly, no duty to indemnify will be triggered.

Pacific responds that because there has not yet been a determination of facts in the Underlying Lawsuit, it is premature to decide Bedivere's duty to indemnify. Regarding the statute of limitations, Pacific contends that whether Assouad's claims are barred by the statute of limitations is a ruling that will be made by the court in the Underlying Litigation consistent with state law and dependent on the facts established in the Underlying Litigation, and that this court should decline to decide the issue in order to avoid inconsistent rulings:

> If this court determines there is no duty to indemnify [Pacific] because Assouad's claims are barred by the statute of limitations, that could leave [Pacific] without insurance coverage for a potential verdict or judgment wherein the fact finder in the Underlying Litigation finds the claims are not barred by the statute of limitations.

D. 11/22/16 Br. 19. In its motion to stay, Pacific also posits that a district court may opt not to exercise jurisdiction under the federal Declaratory Judgment Act and may abstain from, or stay, a declaratory judgment action to avoid interference with pending state proceedings. Pacific also contends that the question whether Bedivere owes a duty to indemnify will not

be ripe until the Underlying Lawsuit concludes.

Bedivere argues in reply, *inter alia*, that Assouad's failure to respond to Bedivere's summary judgment motion and create a fact issue regarding extension of the limitations period "requires summary judgment be entered in Bedivere's favor, declaring that Bedivere has no duty to indemnify Pacific concerning the Underlying Lawsuit, because all of Assouad's claims against Pacific are barred by limitations." P. 12/6/16 Br. 6. Bedivere opposes Pacific's motion to stay, contending, *inter alia*, that *Brillhart*[7] abstention is inapposite because the Underlying Lawsuit does not involve the same issues as this suit and will not resolve or decide whether Bedivere has any liability under the Policy. Bedivere also contends:

> This Court's granting summary judgment that Bedivere has no duty to indemnify because all of Assouad's claims against Pacific are barred by limitations would prevent an unnecessary trial in the state court proceeding. This is because a finding in this case that Assouad's claims against Pacific are barred by limitations would have collateral estoppel and/or res judicata effect in the state court lawsuit. That would provide the basis for Assouad's claims in state court to be dismissed.

P. 12/26/16 Br. 9.

## C

Federal courts have broad discretion over whether to issue a declaratory judgment. *See, e.g., Evanston Ins. Co. v. Tonmar, L.P.*, 669 F.Supp.2d 725, 732 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). "Since

---

[7]*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act "gives federal courts the competence to declare rights, but it does not impose a duty to do so." *Evanston Ins. Co.*, 669 F.Supp.2d at 732 (citing *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). Although "the district court's discretion is broad, it is not unfettered." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The court cannot dismiss a declaratory judgment action "'on the basis of whim or personal disinclination.'" *Id.* (quoting *Rowan Cos. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989)).

When considering whether to dismiss or stay a declaratory judgment action while parallel state court proceedings are pending, a district court must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). There are three key aspects of this analysis—fairness, federalism, and efficiency—that are guided by several nonexclusive factors. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388, 390-92 (5th Cir. 2003) (interpreting factors set out in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)). These factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
>
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

(3) whether the plaintiff engaged in forum shopping in bringing the suit;

(4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

(5) whether the federal court is a convenient forum for the parties and the witnesses;

(6) whether retaining the lawsuit would serve the purposes of judicial economy;

(7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Id*. at 388 (quoting *Trejo*, 39 F.3d at 590-91).

D

1

The court begins with the first factor—whether there is a pending state action in which all of the matters in controversy may be fully litigated. The Court in *Brillhart* cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. Under the first *Trejo* factor, the court considers "whether there is a pending state action in which all of the matters in controversy may be fully litigated." *Sherwin-Williams*, 343 F.3d at 388 (quoting *Trejo*, 39 F.3d at 590). The degree of similarity between the federal and state proceedings implicates the considerations of federalism and efficiency. Respect for

federalism counsels a federal court to abstain "if the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending." *Id*. at 390-91. As for efficiency, the degree of similarity between the parties to each proceeding determines whether the litigation is duplicative. "A federal court should be less inclined to hear a case if necessary parties are missing from the federal forum, because that leads to piecemeal litigation and duplication of effort in state and federal courts." *Id.* at 391 (also noting that piecemeal litigation may raise federalism concerns because of potential for inconsistent state court and federal court judgments).

*Brillhart* abstention does not require that the state and federal proceedings be exactly parallel—meaning "involving the same parties and the same issues." *E.g., Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc*., 903 F.2d 352, 360 (5th Cir. 1990). Although a district court can abstain when a pending state court proceeding presents the same issues and same parties, *see Wilton*, 515 U.S. at 283 (citing *Brillhart*, 316 U.S. at 495), *Brillhart* abstention is not confined to occasions where the proceedings are exactly parallel. When a pending state proceeding "is not 'parallel' because it does not involve all the same parties or issues," the court should consider "the extent of similarity." *Sherwin-Williams*, 343 F.3d at 394 n.5. *Sherwin-Williams* cited the example of *Continental Casualty Co. v. Robsac Industries*, 947 F.2d 1367 (9th Cir. 1991), in which the Ninth Circuit concluded that abstention was proper despite the fact that non-diverse parties were not included in the federal court action. *See Sherwin-Williams*, 343 F.3d at 394 n.5 (citing *Robsac Indus*., 947 F.2d at 1372-73). Similarly, this court has abstained despite the fact that additional parties

- 20 -

had been joined in the federal proceeding. *See Leslie v. Tex. Collegiate Baseball League, Ltd.*, 2008 WL 898935, at *2-3 (N.D. Tex. Apr. 3, 2008) (Fitzwater, C.J.). Following *Sherwin-Williams*, this court in *Leslie* held that it was "not controlling" that the federal declaratory plaintiffs had joined additional parties. *Id*. at *3. This court reasoned that both lawsuits had derived from the same dispute and contained largely identical issues and parties. *Id.* at *2.

Bedivere contends that the Underlying Lawsuit is not sufficiently similar because it will not resolve or decide whether Bedivere has any liability under the Policy and because Bedivere cannot be joined as third party defendant in the Underlying Lawsuit. The court disagrees. In this lawsuit, Bedivere contends that it has no duty to indemnify Pacific because Assouad's claims are barred by the statute of limitations. In the Underlying Lawsuit, Pacific has asserted the statute of limitations as an affirmative defense, and its interests in vigorously pursuing that defense are aligned with Bedivere's interests in pursuing the defense. Although the court in the Underlying Lawsuit will not resolve the question whether Bedivere must indemnify Pacific, it *will* resolve the question whether the statute of limitations bars Assouad's claims. And if Pacific is not held liable in the Underlying Lawsuit, Bedivere will have no duty to indemnify Pacific.[8]

_____

[8]If the fact-finder in the Underlying Lawsuit determines that Assouad's claims are not time-barred, the question whether Pacific has a duty to indemnify will turn on other issues. But as explained above, it is often necessary to "defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Tex.*, 300 S.W.3d at 745.

Moreover, there are no federal-law issues in the present suit. Bedivere seeks a declaration that it owes no duty to indemnify Pacific because Assouad's state-law claims are time-barred. All of the material issues necessary to decide this question can be resolved in the Underlying Lawsuit. And because the issues are all matters of state law, principles of comity and federalism favor their resolution by a Texas court. Therefore, there is a pending state action in which the pertinent matter in controversy—the question whether limitations bars Assouad's claims and, consequently, absolves Bedivere of any duty to indemnify Pacific—may be fully litigated.

2

As to the second and third factors, the Fifth Circuit has clarified that they address "improper and abusive" litigation practices, and that "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper." *Sherwin-Williams*, 343 F.3d at 391. Here, Bedivere filed the instant lawsuit after the Underlying Lawsuit was filed. These factors weigh against dismissal.

3

The fourth and fifth factors consider possible inequities in allowing Bedivere to gain precedence in time or to change forums, and whether this court is a convenient forum for the parties and the witnesses. These weigh against dismissal. Bedivere will not gain precedence if this case continues, and this court is a convenient forum.

Considering judicial economy under the sixth factor, the court finds this federal litigation unduly burdensome on top of the Underlying Lawsuit. Proceedings are already underway in the Underlying Lawsuit, which was filed first, and additional proceedings in this court would be duplicative. The question of limitations is a state-law issue that is best resolved by the state court that is already considering the dispute between Assouad and Pacific. Moreover, if it is determined in the Underlying Lawsuit that Assouad's claims are *not* time-barred, there are other significant issues, all of which relate to Assouad's state-law claims, that the state court will have to resolve before this court can decide the issue of indemnity. In sum, it would waste judicial resources for this court to issue a declaratory judgment regarding an issue of state law (limitations) that is already being litigated in the Underlying Lawsuit.

5

The seventh factor weighs against dismissal. The court is not being asked to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

6

Having considered the issues of federalism, fairness, and efficiency, and guided by the *Trejo* factors, the court concludes that the Underlying Lawsuit presents the better forum for deciding the questions in controversy here—including the potentially case-dispositive statute-of-limitations issue. The court therefore grants Pacific's motion to stay. *See Wilton*,

515 U.S. at 288 n.2 (noting that staying instead of dismissing federal action is often preferable "where the basis for declining to proceed is the pendency of a state proceeding . . . because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy"). The court does not reach Bedivere's motion for summary judgment to the extent that Bedivere contends that it owes no duty to indemnify Pacific because Assouad's claims in the Underlying Lawsuit are time-barred. The clerk of court is directed to close this case for statistical purposes. A party may move the court to reopen the case statistically for cause or after a final judgment is rendered in the Underlying Lawsuit.

\* \* \*

Accordingly, for the reasons explained, the court grants Pacific's motion for summary judgment. The court denies in part and declines to reach in part Bedivere's motion for summary judgment. The court grants Pacific's motion to stay the determination of whether Bedivere has a duty to indemnify Pacific under the Policy until after a final judgment is rendered in the Underlying Lawsuit. The court directs the clerk of court to close this case for statistical purposes during the pendency of the stay.

**SO ORDERED**.

June 14, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE